464 S.E.2d 181

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Abishi C. CUNNINGHAM, A Member of the West Virginia State Bar, Respondent.**

No. 22761.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 1995.

Decided Oct. 12, 1995.

Sherri D. Goodman, Chief Lawyer Disciplinary Counsel, West Virginia State Bar, Charleston, for Complainant.

Clayman R. Norfleet, Pro Hac Vice, Gary, for Respondent.

RECHT, Justice:

The Lawyer Disciplinary Board of the West Virginia State Bar seeks to suspend Abishi C. Cunningham's license to practice law for three months and to have Mr. Cunningham's active cases reviewed to ensure that these cases have not been neglected. The Board recommends these measures based on its finding that Mr. Cunningham violated Rules 1.1, 1.2(a), 1.3 and 1.4(a) of the *Rules of Professional Conduct* (1989) in his handling of a settlement offer. This case also presents a procedural issue concerning the time limits for filing objections with this Court to the Board's recommendations under Rule 3.11 (1994) of the *Rules of Lawyer Disciplinary Procedure* because Mr. Cunningham did not object to the Board's recom-

mendations until after this Court on May 11, 1995 adopted the Board's recommendations.[1]

## I

## Facts and Procedural History

In 1985, Mr. Cunningham filed a civil action on behalf of Dorothy Hunt to recover for injuries she allegedly received in a 1983 automobile accident. Beginning in 1988, the defendants in this accident case were represented by Clyde A. Smith, Jr., who was hired by J.C. Penney Insurance. During settlement negotiations, Mr. Cunningham, who on behalf of his client was demanding $35,000, received offers of $3,500, $6,500 and $7,500. On October 31, 1989, Mr. Smith filed an Offer of Judgment for $7,500 under Rule 68 (1978) of *W.Va.R.Civ.P.*[2] The circuit court record contains no response to the Offer of Judgment. The circuit court ordered a status conference be held on August 14, 1990 but Mr. Smith requested a continuance for personal reasons. Both Mr. Cunningham and Mr. Smith agree that no conference was held on August 14, 1990 and neither appeared for the conference. However, the circuit court's file contains an order dated August 14, 1990 dismissing the civil action with prejudice. The dismissal order stated that it was entered pursuant to the status conference. Neither lawyer received a copy of nor were they aware of the entry of the dismissal order.

Sometime in the Fall of 1990, Mr. Smith spoke with an employee of the insurance company who told him that Mr. Cunningham had agreed to settle the case for $13,000. The insurance company sent Mr. Smith a check for $13,000 and a release, which, on December 17, 1990, Mr. Smith forwarded to Mr. Cunningham along with a dismissal or-

---

**1.** The *Rules of Lawyer Disciplinary Procedure,* effective July 1, 1994, control the procedures of the Lawyer Disciplinary Board in this case because the Statement of Charges was filed on April 30, 1994 and the hearing was held on October 6, 1994. *See Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. at 790 n. 1, 461 S.E.2d at 852 n. 1 (1995) discussing when the *Rules of Lawyer Disciplinary Procedure* apply.

**2.** Rule 68(a) (1978) of the *W.Va.R.Civ.P.* provides: *Offer of judgment.*—At any time more than 10 days before the trial begins, a party defend-

ing against a claim may serve upon the adverse party of an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall direct entry of the judgment by the clerk.

der, which Mr. Smith had prepared and signed.

Mr. Cunningham testified that a representative of the insurance company called him at home with the $13,000 settlement offer sometime before December 12, 1990. However, Mr. Cunningham maintains that he told the insurance company representative that he would have to consult with his client. Mr. Cunningham acknowledges that he received the $13,000 check, release and proposed dismissal order sometime in December 1990.

There is a factual dispute concerning whether Mr. Cunningham informed his client, Mrs. Hunt, of the $13,000 settlement offer. Mrs. Hunt testified that Mr. Cunningham never informed her of the settlement offer until after she contacted opposing counsel who told her of the offer. Mrs. Hunt was aware of the earlier settlement offers of $3,500, $6,500 and $7,500. Dorothy Hurt, Mr. Cunningham's secretary, testified that after Mr. Cunningham received the check, he asked her to locate Mrs. Hunt and to request that the client meet with him. Mrs. Hurt went to the client's business and gave her the message. About 5 minutes later, the client came to Mr. Cunningham's office. The secretary did not hear the conversation between the client and Mr. Cunningham. Mr. Cunningham testified that during the meeting the client looked at the check and told him $13,000 was insufficient.[3] The client denies ever seeing the $13,000 settlement check.

Mr. Cunningham agrees that he did not respond to Mr. Smith's December 1990 letter. On January 15, 1991, Mr. Smith again wrote Mr. Cunningham, who again did not respond. Mrs. Hunt's doctor in West Virginia wrote several letters to Mr. Cunningham concerning payment of Mrs. Hunt's bill and in one letter, the doctor complained about the four occasions his deposition had been sched-

uled and cancelled.[4] Mr. Cunningham testified that the doctor's office had canceled the depositions.

Mrs. Hunt testified that periodically she would contact Mr. Cunningham to learn the status of her case. Eventually she contacted Mr. Smith, opposing counsel who told her about the $13,000 settlement check he had sent to Mr. Cunningham. Mr. Smith testified that he thought Mrs. Hunt contacted him, "sometime after the January 1991 letter in, I think, the fall of 1991." Mrs. Hunt testified that she asked Mr. Cunningham about the check but he denied receiving it.

After his conversation with Mrs. Hunt, Mr. Smith contacted the insurance company and learned that the check had not been negotiated. Mr. Smith then contacted the Circuit Clerk of McDowell County about the dismissal order that he had sent to Mr. Cunningham along with the $13,000 settlement offer. The clerk's office sent him a copy of the last order in the file, which is when Mr. Smith learned for the first time that the circuit court had issued a dismissal order *sua sponte* dated August 14, 1990. Mr. Smith testified that he did not contact Mr. Cunningham after his January 15, 1991 letter.

Mr. Cunningham testified that he learned of the dismissal of Mrs. Hunt's case when Disciplinary Counsel contacted him in 1994. Mr. Cunningham was unsure about the action he took since 1990 to complete the litigation. He believes that he tried to set another deposition for Mrs. Hunt's doctor. Mr. Cunningham testified that he was waiting for the circuit court judge to set another status conference; however, he acknowledges that he did not request a status conference.

Mrs. Hunt's case was finally resolved without Mr. Cunningham's assistance. During oral argument before this Court, Disciplinary

---

**3.** Mrs. Hunt, the client, testified after she learned of the $13,000 check and settlement offer from Mr. Smith, she went to Mr. Cunningham's office and he told her "he hadn't seen a check." At that time they discussed whether she was willing to settle for the money, and Mrs. Hunt said, "I told him I thought that would be too low because I have a lot of problems out of my back." Mrs. Hunt was not sure about when she learned of the settlement offer and when she discussed it with Mr. Cunningham. Mrs. Hunt testified, "I can't

remember. This went on for a couple of years, you know."

**4.** The Board found that the depositions of Mrs. Hunt and her treating chiropractor in North Carolina had been taken and that Mr. Cunningham had advanced the costs of the depositions and paid $2,382, the cost of Mrs. Hunt's treatment by her North Carolina chiropractor.

Counsel reported that another lawyer, working *pro bono,* had successfully assisted Mrs. Hunt to a closure of her case.

As a result of a hearing held on October 6, 1994, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board found that Mr. Cunningham's conduct violated Rules 1.1 (competence), 1.2(a) (scope of representation), 1.3 (diligence) and 1.4(a) (communication) of the *Rules of Professional Conduct* (1989). The Board found insufficient evidence to conclude that violations of Rules 1.5(b) (safekeeping property) and 8.4 (misconduct) had occurred. The Board also noted that Mr. Cunningham had previously received a public reprimand from this Court for neglecting a legal matter. *See Committee of Legal Ethics v. Cunningham,* No. 21717 July 8, 1993 *(per curiam* order). Based on its findings, conclusions and previous discipline, the Board recommended that Mr. Cunningham be suspended for three (3) months from the practice of law and that his reinstatement be conditioned on his cooperation with Disciplinary Counsel's conducting of a review of his active cases and resolution of any problems. The Board's findings of fact, conclusions of law, and recommendations were dated January 31, 1995. On February 14, 1995, this Court received the Board's recommendations.

After receiving the Board's recommendation, Ancil G. Ramey, Clerk of this Court, telephoned the attorney who, at that time, was representing Mr. Cunningham[5] within thirty days of receiving the recommendations and advised him of the option to file a response. Mr. Ramey telephoned this same attorney at least once more before this Court entered its May 11, 1995 order adopting the Board's recommendations. No response was filed before our May 11, 1995 order.

On May 23, 1995, Mr. Cunningham, now represented by Mr. Norfleet, filed a petition requesting that this Court either "vacate its May 11, 1995 ruling imposing sanctions, or, in the alternative, temporarily stay enforcement os [sic] said sanctions; that this Court remand the matter to the Lawyer Disciplinary Board for further fact-finding and evi-

dentiary proceedings...." This Court docketed the petition on June 1, 1995, the parties submitted briefs, and oral argument was held on September 12, 1995.

## II

### Procedural Issue

■ Before considering the merits of the Board's findings of fact, conclusions of law and recommendations, we must first address Mr. Cunningham's failure to object timely to the Board's recommendations after the recommendations were filed on February 14, 1995 with this Court. In 1994, in an effort to improve the just, speedy and inexpensive administration of lawyer discipline and at the same time, protect the interest of the public, this Court adopted the *Rules of Lawyer Disciplinary Procedure.* These rules deal primarily with the procedures to be followed by the Board and with the unique circumstances of a lawyer disciplinary matter before this Court. Generally, once a matter is properly before this Court, the procedures governing the matter are found in the *Rules of Appellate Procedure. See* Rule 1(a) (1980), *Rules of Appellate Procedure.*

One rule of the *Rules of Lawyer Disciplinary Procedure* that is specific to a lawyer disciplinary matter is Rule 3.11 (1994), which requires the parties to file with this Court their written consent or objection within thirty (30) days of the submission of the Board's recommendation. Rule 3.11 states:

> **Rule 3.11.** *Response to Recommended Disposition.* The Office of Disciplinary Counsel and the lawyer shall have thirty days after the date of the report within which to file written consent or objection with the Clerk of the Supreme Court of Appeals to the disposition of the formal charge recommended by the Hearing Panel Subcommittee.

Rule 3.12 of the *Rules of Lawyer Disciplinary Procedure* deals with the procedures when the parties consent to or when this Court does not concur in the recommended

---

**5.** Mr. Norfleet began his representation of Mr. Cunningham in this Court with the May 23, 1995

filing of an "Emergency Petition for Leave of Court and Rehearing."

decision.[6] Rule 3.13 of the *Rules of Lawyer Disciplinary Procedure* deals with the procedures when an objection to the recommended decision is made.[7]

However the *Rules of Lawyer Disciplinary Procedure* do not specify the impact of a failure to file objections within the thirty days specified in Rule 3.11. In this case, although Mr. Cunningham apparently objected to the recommended decision, he failed to file his objection within the thirty days as required by Rule 3.11. In fact, Mr. Cunningham's objections to the Board's recommendations, which were filed on February 14, 1995, were not filed until May 23, 1995, more than twelve weeks after the recommendations were filed and after this Court had issued its May 11, 1995 order adopting the Board's recommendations. In support of his late objections to the recommended discipline, in his brief, Mr. Cunningham relied on Rule 16(b) (1980) of the *Rules of Appellate Procedure*, which requires the showing of good cause to "enlarge the time prescribed by these rules...." [8]

Although we have not previously addressed the time limits applicable to the filing of objections to lawyer disciplinary recommendations, we have discussed time limits of appellate review in several other contexts. In *First Nat. Bank of Bluefield v. Clark*, 181 W.Va. 494, 383 S.E.2d 298 (1989), *overruled on other grounds, Coonrod v. Clark*, 189 W.Va. 669, 434 S.E.2d 29 (1993),[9] we found that "[b]y virtue of Rules 2, 3, and 16 of the Rules of Appellate Procedure, this Court may, for good cause shown, suspend or enlarge the time within which a party may file a petition for appeal under W.Va.Code, 58-5-4." Syl. pt. 2, *First Nat. Bank of Bluefield*. In this case, Rule 16 of the *Rule of Appellate Procedure* and *First Nat. Bank of Bluefield* are not dispositive because the time limitation of Rule 3.11 is not part of the *Rules of Appellate Procedure* and therefore, not subject to Rule 16. In *W.Va. Dept. of Energy v. Hobet Mining & Constr. Co.*, 178 W.Va. 262, 358 S.E.2d 823 (1987), although the appeal was dismissed, we found that Rules 2, 3 and 16 of the *Rules of Appellate Procedure* allow, for good cause shown, an enlargement of the time limits applicable to certain administrative appeals.[10] *See also H.O. Anderson, Inc. v. Rose*, 177 W.Va. 419, 422 n. 7, 352 S.E.2d

6. Rule 3.12 of the *Rules of Lawyer Disciplinary Procedure* states:

> **Rule 3.12.** *Consent to Recommended Disposition.* If the parties consent to the recommended disposition, the matter shall be filed with the Supreme Court of Appeals for entry of an order consistent with the recommended disposition. If the Court does not concur with the recommended disposition, the Clerk of the Supreme Court of Appeals shall promptly notify the parties, establish a briefing schedule, and notify the parties of the date and time of oral argument or submission of the case without oral argument before the Supreme Court of Appeals. Following oral argument or submission of the case without oral argument, the Court will file an opinion or order disposing of the case. Unless otherwise provided in the Court's opinion or order, any sanction will not take effect until after expiration of the rehearing period or the denial of any petition for rehearing.

7. Rule 3.13 of the *Rules of Lawyer Disciplinary Procedure* states:

> **Rule 3.13.** *Objection to Recommended Disposition.* The filing of any objection to the report of the Hearing Panel Subcommittee shall constitute commencement of proceedings to disposition before the Supreme Court of Appeals. The Clerk of the Supreme Court of Appeals shall promptly establish a briefing

schedule and shall notify the parties of the date and time of oral argument or submission of the case without oral argument before the Supreme Court of Appeals. Following oral argument or submission of the case without oral argument, the Court will file an opinion or order disposing of the case. Unless otherwise provided in the Court's opinion or order, any sanction will not take effect until after expiration of the rehearing period or the denial of any petition for rehearing.

8. Rule 16(b) (1980) of the *Rules of Appellate Procedure* states:

> The Court for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time.

9. In *Coonrod v. Clark*, 189 W.Va. 669, 434 S.E.2d 29 (1993), we overruled Syl. pt. 1 of *First National Bank of Bluefield, supra*, because of the amendment of the governing statute and rule.

10. *Hobet* also intimated that there are constitutional limits on the power to enlarge time imposed by W.Va.Const. art. V, § 1. 178 W.Va. at 265, 358 S.E.2d at 826. A discussion of those limits is not required by this case.

541, 544 n. 7 (1986) (applying Rule 16 of the *Rules of Appellate Procedure* to consider an appeal filed three days out of time). Generally, we have been reluctant to impose jurisdictional obstacles to block the right of appeal. *See Talkington v. Barnhart,* 164 W.Va. 488, 493, 264 S.E.2d 450, 453 (1980) (refusing to allow the failure to provide notice of the filing of a civil case's transcript to bar appellate review); *State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 226 S.E.2d 721 (1976) (approving the practice of resentencing defendants to extend the time for filing criminal appeals). In this case, we find that the time limits of Rule 3.11 of the *Rules of Lawyer Discipline* are not jurisdictional and although we expect compliance with Rule 3.11, we are aware that certain circumstances may arise preventing compliance.

A similar awareness prompted the drafters of the Rules of Civil Procedure to specify when relief from a final judgment can be obtained through a Rule 60(b) motion. The Fifth Circuit in *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970), in discussing the purpose of Rule 60(b) of the *Federal Rules of Civil Procedure* [11] noted:

> The provisions of this rule [Rule 60(b)] must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts. In its present form, 60(b) is a response to the plaintive cries of parties who have for centuries floundered, and often succumbed, among the snares and pitfalls of the ancillary common law and equitable remedies. It is designed to remove the uncertainties and historical limitations of the ancient remedies but to preserve all of the various kinds of relief which they offered. [Emphasis in original.]

*See N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 (1984) discussing Rule 60(b) of the *W.Va.R.Civ.P.*

Rule 60(b) (1960) of the *W.Va.R.Civ.P.* provides:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3), and (6) not more than eight months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

 Because of the guidance offered by Rule 60(b), this Court will consider a motion

---

**11.** Because Rule 60(b) (1987) of the *Federal Rules of Civil Procedure* is very similar to Rule 60(b) (1960) of the *W.Va.R.Civ.P.,* we follow our usual practice of giving substantial weight to federal cases in determining the meaning and scope of our rules of civil procedure. *See Painter v. Peavy,* 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 758 n. 6 (1994) discussing Rule 56 and the citations therein.

for relief from the time limitation of Rule 3.11 as if the motion were made under Rule 60(b) of the *W.Va.R.Civ.P.* The motion for relief from the time limitation of Rule 3.11 must be made within a reasonable time, and for reasons (1), (2), (3), and (6) of Rule 60(b) not more than four (4) months after the report of the Hearing Subcommittee of the Lawyer Disciplinary Board is filed with the Clerk of this Court.[12] We, therefore, hold that on motion and upon a proper showing, this Court may relieve the Office of Disciplinary Counsel or the lawyer, subject to the disciplinary recommendation, of the requirement found in Rule 3.11 of the *Rules of Lawyer Disciplinary Procedure* (1994), that written consent or objection to the disposition of the formal charge recommended by the Hearing Panel Subcommittee must be filed with the Clerk of this Court within thirty days of such recommendation. A motion for relief from the Rule 3.11 time limitation will be considered by this Court as if the motion were made under Rule 60(b) (1960) of the *W.Va.R.Civ.P.* Such relief motion must be made within a reasonable time, and for reasons (1), (2), (3), and (6) of Rule 60(b) not more than four (4) months after the report of the Hearing Subcommittee of the Lawyer Disciplinary Board is filed with the Clerk of this Court.

In this case, we find that Mr. Cunningham made his relief motion within a reasonable time and not more than four (4) months after the report of the Hearing Subcommittee of the Lawyer Disciplinary Board was filed with the Clerk of this Court. Although Mr. Cunningham's brief did not specify the reason why he was entitled to relief, in oral argument, Mr. Cunningham's current lawyer indicated that Mr. Cunningham had instructed his previous lawyer to file objections and was unaware that the objections had not been filed until he received this Court's May 11, 1995 order. We note that after Mr. Cunningham learned of this Court's order, he sought immediate relief. Based on this representation, we find that Mr. Cunningham has presented a reason justifying relief from

the operation of this Court's May 11, 1995 order and we elect to treat Mr. Cunningham's objections as timely.

## III

### Professional Conduct Issue

■ In considering the merits of this case, we note that our standard for reviewing the Board's recommendations regarding the suspension of a lawyer for ethical violations is stated in Syl. pt. 1, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995):

Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence. Prior cases which required that ethics charges be proved by full, preponderating and clear evidence are hereby clarified.

Rule 3.7 of the *Rules of Lawyer Disciplinary Procedure* states:

**Standard of Proof.** In order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be proven by clear and convincing evidence.

*See McGraw,* 194 W.Va. at 796, 461 S.E.2d at 858, discussing the "clear and convincing" standard of proof.

■ Recently in *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), we noted that substantial deference is given to the Board's findings of fact. Such deference is appropriate because the Board "hears the testimony of the witnesses firsthand and, being much closer to the pulse of the hearing, is much better situated to resolve such issues as credibility. [Footnote omitted.]" *McCorkle,* 192 W.Va. at 290, 452 S.E.2d at 381. Because the Board's factual findings and conclusions are given substantial deference, "[t]he burden is on the attorney at law to show that the factual findings are not supported by reli-

---

12. We recognize that Rule 60(b) (1987) of the *W.Va.R.Civ.P.* provides for an eight (8) month limitation for matters involving reasons listed in the rule in subsections (1), (2), (3), and (6).

However because of the expedited nature of lawyer disciplinary procedures, we have determined that a four (4) month period for appeals involving those subsections is more appropriate.

able, probative, and substantial evidence on the whole adjudicatory record made before the" Board. *McCorkle,* 192 W.Va. at 290, 452 S.E.2d at 381.

In this case, the Board found that Mr. Cunningham's conduct violated Rules 1.1, 1.2(a), 1.3 and 1.4(a) of the *Rules of Professional Conduct* (1989). Rule 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

Rule 1.2(a) provides:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 1.4(a) provides:

A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

■ Based on Mr. Cunningham's acknowledgement that for four years he failed to move Mrs. Hunt's case forward, that he failed to request the circuit court to schedule a status conference or discover why no conference had been scheduled, and that he failed to review the circuit court file, the Board found a lack of thoroughness or preparation, a violation of Rule 1.1. Mr. Cunningham argues that other aspects of his representation of Mrs. Hunt demonstrate no disregard for the responsibility he owed to his client. Based on our independent review of the record, we find clear and convincing evidence in the record that there was a problem with Mr. Cunningham's thoroughness and preparation in regard to Mrs. Hunt's suit after December 1990.

Based on the testimony of Mrs. Hunt, which the Board found to be creditable, that Mr. Cunningham failed to inform her of the December 1990 settlement offer, the Board found that Mr. Cunningham failed to "consult with the client as to the means by which they [the client's objectives] are to be pursued," a violation of Rule 1.2. Mr. Cunningham asserts that he informed Mrs. Hunt of the $13,000 settlement offer; however, the parties agree that after the settlement offer, Mr. Cunningham did nothing about the settlement or the case. Given the testimony of Mrs. Hunt that she was not informed of the settlement offer, we find clear and convincing evidence to support the Board's conclusion that Mr. Cunningham violated Rule 1.2 by failing to inform Mrs. Hunt of the settlement offer. Mr. Cunningham's failure to return Mrs. Hunt's calls and failure to tell her the status of her case is also a violation of Rule 1.4(a). When the record is considered as a whole, we find clear and convincing evidence to support the Board's conclusion that Mr. Cunningham violated Rule 1.4(a).

The parties agree that after December 1990, Mr. Cunningham undertook no action on behalf of Mrs. Hunt. Mr. Cunningham provided no explanation for the inaction. Rule 1.3 requires a lawyer to act diligently and we agree with the Board that the evidence is clear and convincing that Mr. Cunningham failed to act diligently.

■ Although the Board's factual findings and conclusions are afforded substantial deference, "[t]his Court reviews *de novo* questions of law and the appropriateness of a particular sanction." *McCorkle,* 192 W.Va. at 289, 452 S.E.2d at 380. Syl. pt. 3, *McCorkle,* states:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own

independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*In accord* Syl. pt. 2, *McGraw, supra.*

We have long held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). *In accord* Syl. pt. 2, *Committee on Legal Ethics v. Sheatsley,* 192 W.Va. 272, 452 S.E.2d 75 (1994); Syl. pt. 10, *Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993); Syl. pt. 1, *Committee on Legal Ethics v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992); Syl. pt. 6, *Committee on Legal Ethics v. Farber,* 185 W.Va. 522, 408 S.E.2d 274 (1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992); Syl. pt. 1, *Committee on Legal Ethics v. Charonis,* 184 W.Va. 268, 400 S.E.2d 276 (1990).

■ Some of the major factors to be considered in determining a disciplinary penalty were outlined in Syl. pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987), which states:

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

*In accord* Syl. pt. 4, *McCorkle, supra;* Syl. pt. 2, *Craig, supra;* Syl. pt. 5, *Committee on Legal Ethics by Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

■ We endeavor to make an individualized assessment of the sanction rather than follow a punishment schedule. In Syl. pt. 2, *Committee on Legal Ethics v. Mullins,*

159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled on another matter,* Syl. pt. 11, *Cometti, supra,* we said:

In disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate, and when the committee on legal ethics initiates proceedings before this Court, it has a duty to advise this Court of all pertinent facts with reference to the charges and the recommended disciplinary action.

*In accord* Syl. pt. 4, *Roark, supra;* Syl. pt. 2, *Committee on Legal Ethics v. Higinbothan,* 176 W.Va. 186, 342 S.E.2d 152 (1986). One of the factors this Court considers in determining an appropriate sanction is whether the lawyer-respondent has received prior discipline. In Syl. pt. 5, *Committee on Legal Ethics v. Tatterson,* 177 W.Va. 356, 352 S.E.2d 107 (1986), we stated:

Prior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust.

*See Cometti,* 189 W.Va. at 272 n. 15, 430 S.E.2d at 330 n. 15; Syl. pt. 2, *Committee on Legal Ethics v. Taylor,* 190 W.Va. 133, 437 S.E.2d 443 (1993) (*per curiam* ).

After an independent review of the record, we find that the Board's factual findings are supported by clear and convincing evidence. After careful consideration of the facts, the serious nature of Mr. Cunningham's conduct, and Mr. Cunningham's prior disciplinary record, we find that although the conduct demands to be sanctioned, the Board's recommended sanctions of a three-month suspension and review of cases by the Disciplinary Counsel are not appropriate given the facts and circumstances of this case. Rule 3.16 (1994) or the *Rules of Lawyer Disciplinary Procedure* states:

In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court or Board shall consider the following factors: (1)

whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.

Once these factors are applied to the case at bar, we find that the Board should have placed greater emphasis on remedial measures rather than punitive measures.[13] Accordingly, we find that Mr. Cunningham should be publicly reprimanded, that his practice should be supervised for at least two years [14] and that he be required to pay the costs of these proceedings. The office of Disciplinary Counsel should monitor Mr. Cunningham's supervision, which at a minimum, should include an immediate review of Mr. Cunningham's current cases and a peri-odic report to the Disciplinary Counsel's office.

For the above stated reasons, Abishi C. Cunningham is publicly reprimanded, and is required to have his practice supervised for at least two years and to pay the costs of the proceedings.

Public reprimand, two year supervised practice and costs.

MILLER, Retired J., sitting by temporary assignment.

ALBRIGHT, J., did not participate.

---

**13.** The permissible sanctions are specified in Rule 3.15 (1994) of the *Rules of Lawyer Disciplinary Procedure*, which states:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14:
(1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the Panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

**14.** The Board, after consulting with Disciplinary Counsel, is to design, adopt and implement a plan of supervision for Mr. Cunningham with all due dispatch upon receipt of this Opinion, however in no event longer than thirty (30) days thereafter.