541 S.E.2d 1

Patsy L. ROSE, Plaintiff
Below, Appellant,

v.

THOMAS MEMORIAL HOSPITAL
FOUNDATION, INC., Defendant
Below, Appellee.

No. 26603.

Supreme Court of Appeals of
West Virginia.

Submitted May 3, 2000.

Decided June 14, 2000.

Concurring Opinion of Justice
Starcher June 28, 2000.

Dissenting Opinion of Justice
McGraw Jan. 16, 2001.

Robert G. Wolpert, Esquire, Charleston, for Plaintiff.

Thomas J. Hurney, Esquire, Karen M.R. Weber, Esquire, Jackson & Kelly, Charleston, for Defendant.

PER CURIAM.

This is an appeal by Patsy Rose (hereinafter "Appellant") from a January 6, 1999, order of the Circuit Court of Kanawha County denying the Appellant's motion to vacate a May 1, 1998, order dismissing with prejudice her amended complaint against the "Herbert J. Thomas Memorial Hospital Association" (hereinafter "hospital" or "Appellee"). The Appellant contends that the lower court erred in denying the motion to vacate the May 1, 1998, order. Upon evaluation of the record, briefs, and arguments of counsel, we affirm the decision of the lower court.

## I.  Facts

On July 17, 1997, the Appellant filed a medical malpractice action against "Thomas Memorial Hospital Foundation, Inc.," (hereinafter "Foundation") alleging that a cerebral aneurysm suffered by the Appellant was not

properly diagnosed during an emergency room visit on July 21, 1995.[1] On November 14, 1997, the Secretary of State accepted service as statutory agent for the Foundation, and the complaint was served on the Foundation. On November 24, 1997, the Foundation moved to dismiss the complaint, explaining that it was a charitable corporation not involved in the management of the hospital.

Recognizing the misnomer regarding the proper name of the hospital defendant, the Appellant moved to amend the complaint on December 9, 1997, under Rule 15 of the West Virginia Rules of Civil Procedure and sought to name the "Herbert J. Thomas Memorial Hospital Association" as the proper defendant. Subsequent to a January 9, 1998, hearing, the lower court dismissed the Foundation with prejudice and also dismissed the civil action against the hospital, based upon the lower court's determination that the hospital was not served with the complaint during the two-year statute of limitations nor did it have notice of the Appellant's claims within that limitations period.

■ Specifically, the lower court acknowledged that Rule 15(c)[2] of the West Virginia Rules of Civil Procedure governs the relation back of amendments to complaints and pro-

vided, at the time of the January 1998 hearing, as follows:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The lower court relied upon this Court's guidance in the syllabus of *Maxwell v. Eastern Associated Coal Corp.*, 183 W.Va. 70, 394 S.E.2d 54 (1990), decided under the pre–1998 Rule 15(c):

Where a plaintiff seeks to change a party defendant by a motion to amend a complaint under Rule 15(c) of the West Virginia Rules of Civil Procedure, the amendment will relate back to the filing of the original complaint only if the pro-

---

1. The Appellant intended to file her civil action against Thomas Memorial Hospital, properly referenced as the "Herbert J. Thomas Memorial Hospital Association," but the Appellant received the wrong corporate name from the Secretary of State's office and incorrectly named the defendant. The record contains no reference to whether the Appellant's attorney attempted to locate the proper hospital name from any assumed name listings. *See* W. Va.Code § 47–8–2 (1999) regarding certificates of true name; W. Va.Code § 47–8–3 (1999) regarding an alphabetical listing in the Office of the County Clerk; and W. Va.Code § 47–8–4 (1999) regarding registration of trade name.

2. Subsequent to an amendment effective in April 1998, Rule 15(c), Relation Back of Amendments, provided more liberal time limitations. The pertinent distinction between the two versions is that the 1998 amendment required defense knowledge within the time for service, rather than requiring such knowledge within the more limited period of time for filing pursuant to the statute of limitations. The West Virginia altera-

tions tracked the federal amendments of 1991 and provided as follows:

An amendment of a pleading relates back to the date of the original pleading when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action; or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing paragraph (2) is satisfied and, within the period provided by Rule 4(k) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have brought against the party.

W. Va. R.C.P. 15(c).

posed new party defendant, prior to the running of the statute of limitations, received such notice of the institution of the original action that he will not be prejudiced in maintaining his defense on the merits and that he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

183 W.Va. at 70, 394 S.E.2d at 54, Syllabus.

The parties presented no evidence of notice to *any* defendant until the complaint was served upon the Foundation on November 14, 1997, approximately four months after the expiration of the statute of limitations. Based upon the version of Rule 15(c) applicable at that time, the lower court dismissed the action and explained as follows during the January 9, 1998, hearing:

Mr. Wolpert, for appeal purposes, I don't know that it helps you. I'm going to allow the amendment, substituting as a—as the real defendant Herbert J. Thomas Hospital Association, but I'm going to find that the amendment does not relate back to the

date of the filing of this lawsuit and that by testimony submitted to the Court, the first notice that Herbert J. Thomas Memorial Hospital Association had was when this suit was filed with the Secretary of State's office on or about November 5, 1997, [this date was stated to be November 14, 1997, in other references] and that that date is outside the statute of limitations and therefore those actions are barred by the running of the statute of limitations, therefore the case will be dismissed.

Despite that oral ruling of the lower court, the May 1, 1998, written order denied the motion to amend and dismissed the action based upon failure of the complaint to relate back pursuant to Rule 15(c).[3] A Rule 59(e)[4] motion to alter or amend a judgment was not filed. On July 17, 1998, the Appellant filed a Rule 60(b)[5] motion to vacate the May 1, 1998, order, reasserting the arguments relied upon in the motion to amend the complaint. Reference to the disparity between the oral statements of the lower court on January 9, 1998, and the precise language of the May 1, 1998, order was conspicuously absent from this Rule 60(b) motion.[6]

3. Some degree of confusion existed regarding the entry of the May 1, 1998, order. Two separate orders were initially prepared, and both appear in the record before this Court. One version, as signed and entered by the lower court, simply denied the Appellant's motion to amend and dismissed the action. Another version, not signed or entered by the lower court, granted the motion to amend but dismissed the action since the amendment did not relate back to the date of the filing.

4. Rule 59(e) of the West Virginia Rules of Civil Procedure is entitled "Motion to alter or amend a judgment" and provides as follows: "Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

5. Rule 60(b) of the West Virginia Rules of Civil Procedure provides as follows:

Mistakes; inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrin-

sic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

6. The Appellant's attempt to illuminate the inconsistency consisted only of a telephone conversation apparently conducted with opposing coun-

On August 26, 1998, the lower court conducted a hearing on the Rule 60(b) motion to vacate and denied that motion. An order denying the motion was entered on January 6, 1999, and that is that order from which the Appellant presently appeals.

## II.   Standard of Review

■■■ In syllabus point three of *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974), this Court addressed the scope of review of the denial of a Rule 60(b) motion and explained: "An appeal of the denial of a *Rule* 60(b) motion brings to consideration for review only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Further, in syllabus point four of *Toler*, we stated: "In reviewing an order denying a motion under *Rule* 60(b), W.Va.R.C.P., the function of the appellate court is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." Syllabus point five of *Toler* provided further guidance, as follows: "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion."

## III.   Timeliness of Appeal

■■■ The Appellant neither appealed the May 1, 1998, order dismissing this claim nor filed a motion which would have tolled the running of the four-month appeal period which expired on September 1, 1998. While a Rule 59(e) motion to alter or amend a judgment would have tolled the appeal period, the Appellant filed only a Rule 60(b) motion which was insufficient to toll the appeal period.[7] This critical distinction between the consequences of Rule 59(e) and Rule 60(b) motions is well-established. In syllabus point one of *Toler*, this Court explained that "[a] motion made pursuant to *Rule* 60(b), W.Va.R.C.P., does not toll the running of the appeal time of eight months [now four months] provided by West Virginia Code, Chapter 58, Article 5, Section 4, as amended." [8] *See* Syl. Pt. 2, *Gaines v. Drainer*, 169 W.Va. 547, 289 S.E.2d 184 (1982). A Rule 59(e) motion, however, "suspend[s] the running of the time for appeal, and that time does not begin to run until the entry of an order deciding the issues raised by the motion." *Riffe v. Armstrong*, 197 W.Va. 626,

---

sel in November 1998 and a December 10, 1998, letter to opposing counsel and the lower court regarding the difference between the order as entered and the verbal statements of the court during the hearing.

7. The Rule 60(b) motion, as referenced above, merely reasserted the same grounds and facts upon which the circuit court had previously relied in dismissing the action.

8. Effective July 1, 1990, West Virginia Code § 58–5–4 (1990), the statute establishing the time for filing an appeal to this Court, was amended to reduce the time for filing an appeal from eight months to four months. The statute presently provides as follows:

No petition shall be presented for an appeal from any judgment rendered more than four months before such·petition is filed with the clerk of the court where the judgment being appealed was entered: Provided, That the judge of the circuit court may, prior to the expiration of such period of four months, by order entered of record extend and reextend such period for such additional period or periods, not to exceed a total extension of two

months, for good cause shown, if the request for preparation of the transcript was made by the party seeking such appellate review within thirty days of the entry of such judgment, decree or order.

Rule 3(a) of the West Virginia Rules of Appellate Procedure tracks the language of the statute and provides as follows:

(a).Time for Petition. No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered more than four months before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered, whether the State be a party thereto or not; provided, that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and reextend such period, not to exceed a total extension of two months, if a request for the transcript was made by the party seeking an appeal or supersedeas within thirty days of the entry of such judgment, decree or order. In appeals from administrative agencies, the petition for appeal shall be filed within the applicable time provided by the statute.

636, 477 S.E.2d 535, 545 (1996), *holding modified on other grounds, Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999). In syllabus point three of *Lieving v. Hadley,* 188 W.Va. 197, 423 S.E.2d 600 (1992), we held: "A motion which would otherwise qualify as a Rule 59(e) motion that is not filed and served within ten days of the entry of judgment is a Rule 60(b) motion regardless of how styled and does not toll the four month appeal period for appeal to this court." *See also State ex rel. McDowell County Sheriff's Dep't v. Stephens,* 192 W.Va. 341, 452 S.E.2d 432 (1994).

Rule 72 of the West Virginia Rules of Civil Procedure, entitled "Running of time for appeal," provides as follows:

The full time for filing a petition for appeal commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: Granting or denying a motion for judgment under Rule 50(b); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion were granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or granting or denying a motion for a new trial under Rule 59.

In footnote five of *Savage v. Booth,* 196 W.Va. 65, 468 S.E.2d 318 (1996), we further elaborated upon this crucial distinction between Rule 59(e) and Rule 60(b) and explained how the use of these rules affects the jurisdiction of this Court:

Rule 59(e) and Rule 60 provide for different motions directed to similar ends. Rule 59(e) governs motions to "alter or amend" a judgment. Rule 60, which is divided into two distinct but important sections, governs requests for relief from a judgment or order for various listed reasons. Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b), but each motion seeks to erase the finality of a judgment and to allow further proceedings. Rule 59(e) contains a strict ten-day limit, while Rule 60(b) allows an eight-month period, sometimes more. We estab-

lish a bright-line rule for distinguishing Rule 59(e) motions from Rule 60(b) motions. The time of a motion's service controls whether a motion challenging a judgment is a Rule 60(b) or Rule 59(e) motion. Such a motion, if served within ten days of a final judgment is a Rule 59(e) motion. Conversely, a motion served more than ten days after a final judgment is a Rule 60(b) motion.

This bright-line rule simplifies treatment of the motions. The rule reduces the confusion often caused when movants haphazardly title and characterize motions asking that a judgment be reopened. It makes decisions easier for both judges and litigants and, because Rule 59(e) tolls the time period for appeal, which Rule 60(b) does not, it makes it easier for an appellate court to be sure when it has jurisdiction over an appeal.

*Id.* at 68, 468 S.E.2d at 321 n. 5.

In syllabus point four of *James M.B. v. Carolyn M.* 193 W.Va. 289, 456 S.E.2d 16 (1995), we explained that "Rule 59(e) of the West Virginia Rules of Civil Procedure provides the procedure for a party who seeks to change or revise a judgment entered as a result of a motion to dismiss or a motion for summary judgment." In syllabus point seven of *James M. B.,* we concluded: "A motion for reconsideration filed within ten days of judgment being entered suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion."

We also note that the Appellant did not request an enlargement of the time within which to file an appeal to this Court. In syllabus point two of *First National Bank of Bluefield v. Clark,* 181 W.Va. 494, 383 S.E.2d 298, *overruled on other grounds, Coonrod v. Clark,* 189 W.Va. 669, 434 S.E.2d 29 (1993), we explained: "By virtue of Rules 2, 3, and 16 of the Rules of Appellate Procedure, this Court may, for good cause shown, suspend or enlarge the time within which a party may file a petition for appeal under W.Va.Code, 58-5-4." While we have explained that this Court maintains "the im-

plied or inherent authority to enlarge the time for appeal fixed by statute," we require a showing of good cause, and no showing of good cause to support a request for enlargement was advanced in the present case. *Id.* at 499, 383 S.E.2d at 303. We have also recognized that any "requests to enlarge time must usually be made before the fact." *West Virginia Dep't of Energy v. Hobet Mining and Constr. Co.,* 178 W.Va. 262, 264, 358 S.E.2d 823, 825 (1987).

Based upon the concisely established principles of Rules 59(e) and 60(b), as well as the distinctions between those rules, we find that had the Appellant in the present case filed a Rule 59(e) motion, the four-month appeal period would have been tolled. Because the Appellant filed a Rule 60(b) motion, however, the appeal period for the May 1, 1998, dismissal was not tolled and expired on September 1, 1998, prior to any appeal to this Court.

### IV. The Rule 60(b) Determination

Having resolved that the appeal period for the May 1, 1998, order expired on September 1, 1998, the only issue to be addressed by this Court on appeal is whether the lower court properly denied the motion to vacate under Rule 60(b). As referenced above, our review of a lower court's denial of Rule 60(b) relief is limited to "only the order of denial itself and not the substance supporting the underlying judgment nor the final judgment order." Syl. Pt. 3, in part, *Toler,* 157 W.Va. at 778, 204 S.E.2d at 86. Our function "is limited to deciding whether the trial court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown in a timely manner." *Id.* at Syl. Pt. 4, in part.

▮▮▮ In the case sub judice, the Appellant failed to present any novel issues in the Rule 60(b) motion and reiterated only the issue of mistaken identity and misnomer

based upon information received from the Secretary of State's office. Although the Appellant contends on appeal that a discrepancy existed between the lower court's oral ruling and the written order, the Appellant failed to include that issue within the Rule 60(b) motion and addressed it only in letter form to opposing counsel and the lower court.[9]

▮▮ In syllabus point six of *Toler,* this Court provided guidance to lower courts in determining Rule 60(b) issues, as follows:

[a] court, in the exercise of discretion given it by the remedial provisions of Rule 60(b), W.Va. R.C.P., should recognize that the rule is to be liberally construed for the purpose of accomplishing justice and that it was designed to facilitate the desirable legal objective that cases are to be decided on the merits.

157 W.Va. at 778, 204 S.E.2d at 86, Syl. Pt. 6.

In his concurring opinion in *Cox v. State,* 194 W.Va. 210, 460 S.E.2d 25 (1995), Justice Cleckley also acknowledged the detriments of employing Rule 60(b) in footnote five:

There is a significant disadvantage and tradeoff in proceeding under Rule 60(b). Rarely is relief granted under this rule because it provides a remedy that is extraordinary and is only invoked upon a showing of exceptional circumstances. Because of the judiciary's adherence to the finality doctrine, relief under this provision is not to be liberally granted. Accordingly, the disposition of a Rule 60(b) motion is within the sound discretion of the circuit court and will not be overturned absent an abuse of that discretion. *Browder v. Director, Ill. Dep't of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521, 530 n. 7 (1978); *N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793

9. While we express no opinion upon the proper resolution of other potential arguments available to the Appellant, we note that no other issues were raised in the Rule 60(b) motion for the lower court's consideration. For instance, issues regarding the amendment to Rule 15(c), application of which would have been favorable to the Appellant, were not raised. Utilization of West Virginia Code § 55–2–18 (1994) (the "Savings Statute") was not requested. As a general rule,

this Court will not address nonjurisdictional issues that were not first addressed below. *See* Syl. Pt. 2, *Trent v. Cook,* 198 W.Va. 601, 482 S.E.2d 218 (1996); Syl. Pt. 3, *Voelker v. Frederick Bus. Properties Co.,* 195 W.Va. 246, 465 S.E.2d 246 (1995). Consequently, we do not endeavor to determine the extent of relief the Appellant could have obtained from any other potential avenues.

(1984); *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970).

194 W.Va. at 219, 460 S.E.2d at 34 n. 5.

In *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970), we discussed the abuse of discretion standard and quoted with approval the reasoning of *Brunner v. United States,* 190 F.2d 167 (9th Cir. 1951), *cert. granted,* 342 U.S. 917, 72 S.Ct. 364, 96 L.Ed. 685, *judgment rev'd on other grounds,* 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332 (1952), as follows:

> 'Where the law commits a determination to a trial judge and his discretion is exercised with judicial balance, the decision should not be overruled unless the reviewing court is actuated, not by a desire to reach a different result, but by a firm conviction that an abuse of discretion has been committed.'

*Id.* at 377, 175 S.E.2d at 457, quoting *Brunner,* 190 F.2d at 170.

In the absence of appropriate presentation of additional issues for consideration, the lower court's denial of Rule 60(b) relief is not error. "In establishing the bounds of such motion, the weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996). "[A] Rule 60(b) motion to reconsider is simply not an opportunity to reargue facts and theories upon which a court has already ruled." *Id.* at 706, 474 S.E.2d at 886. *See Smith v. Evans,* 853 F.2d 155, 158 (3rd Cir.1988) ("legal error, without more, cannot justify granting a Rule 60(b) motion."); *United States v. Williams,* 674 F.2d 310, 312 (4th Cir.1982) ("Rule 60(b) does not authorize a motion merely for reconsideration of a legal issue. . . . Where the motion is nothing more than a request that the . . . court change its mind . . . it is not authorized by Rule 60(b)"). (citation omitted). We have also emphasized the burden on the Appellant to demonstrate error. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syllabus Point 2, *Perdue v. Coiner,* 156 W.Va. 467, 194 S.E.2d 657 (1973).

In summary, this Court is precluded from engaging in an evaluation of the lower court's holding that the amendment of the complaint did not relate back to the date of the filing of the action because that issue is not properly before this Court. We find that the appeal period for the May 1, 1998, order expired on September 1, 1998, and that the Rule 60(b) motion was properly denied.

Affirmed.

STARCHER, Justice, concurring.

(Filed June 28, 2000)

I agree with the reasoning employed by the majority in this case. The majority correctly concludes that the plaintiff's attorney simply didn't appeal the right order, and didn't challenge it in the circuit court in the right way.

But I am bothered by this outcome—an innocent litigant loses because their attorney got lost in a maze of rules. None of this needed to occur, and the circuit judge probably could have made this case go forward rather than have declared it dead on arrival.

The plaintiff in this case went to a building on MacCorkle Avenue in South Charleston, West Virginia that has a sign out front with the logo "Thomas Memorial Hospital." While there, she claims she was malpracticed upon by the hospital's staff, who wrote notes on pieces of paper with the heading "Thomas Memorial Hospital." She hired a lawyer, and the lawyer called the Secretary of State to find out the proper name for the hospital.

The Secretary of State said the name of the business at the building was "Thomas Memorial Hospital Foundation, Inc.," a business which lists its principal office address as the same building on MacCorkle Avenue in South Charleston, West Virginia.[1] So the

---

1. Not surprisingly, the Secretary of State's corporation records are indexed alphabetically by the first letter in the first name. Hence, anyone doing a computer search for "Thomas" Hospital

lawyer filed a complaint suing the business with that name for malpractice.

After the statute of limitation had expired, the attorney for the hospital went to court and said that plaintiff's lawyer screwed up and sued the wrong defendant. The hospital's lawyer pointed out that the plaintiff's lawyer should have sued the "Herbert J. Thomas Memorial Hospital Association" ("Hospital Association"). The lawyer—representing both the "Hospital Foundation" and the "Hospital Association"—moved to dismiss the lawsuit because the proper defendant was not sued within the statute of limitation.

Every lawyer knows that a statute of limitation is designed to protect a defendant from stale lawsuits, lawsuits of which a defendant has no knowledge and no ability against which to defend. When a certain period of time has passed, the defendant can generally relax, safe in the knowledge that the plaintiff will not surprise the defendant many years later with a suit.

In the instant case, the correct defendant—the "Hospital Association"—knew it was being sued by the plaintiff for malpractice. The fact that the right defendant hadn't been served with a piece of paper styled "complaint," so as to trigger insurance coverage, is irrelevant. The defendant knew a lawsuit was coming, and had a chance to defend, and had no reason to relax.

My point here is that the hospital suffered no prejudice when the plaintiff sued the wrong defendant. The people in charge knew an action was coming, and sent their lawyer down to dismiss the complaint. The lawyer got the complaint dismissed against the "Hospital Foundation." Then the judge let the plaintiff amend her complaint to sue the "Hospital Association," whereupon the judge immediately dismissed the complaint as not being timely filed. This latter action was fundamentally unfair.

The plaintiff in this case should not have been penalized by the defendant's "hide the peanut" strategy of having multiple company names.[2] But the fact remains that the plain-

will invariably produce the "Thomas Memorial Hospital Foundation, Inc." It is only by running a search for "Herbert" that the correct defendant, "Herbert J. Thomas Memorial Hospital Association" comes up. *See* "West Virginia Secretary of State Business Organization Information System," http://www.state.wv.us/wvcorporations. Plaintiffs struggling to figure out the correct name of the defendant to sue should keep this in mind.

2. One commentator lamented the confusion created by insurance companies that use different corporate names and logos to impede the filing of lawsuits:

> Lots of insurance companies operate under group or holding company names, and acquisitions, mergers, reorganizations, and name changes happen all the time. A policyholder's lawyer often can't figure out in advance of filing suit what is, and what isn't, a suable entity.
>
> For instance. Federal Kemper Casualty Insurance Company wrote auto policies in West Virginia for years. A few years ago Kemper sold its auto insurance business to Anthem P & C Holdings, a subsidiary of Anthem, Inc., the parent of Anthem Blue Cross/Blue Shield of Indiana. Anthem P & C also acquired Shelby Insurance, Insura, and some other casualty company. All these were operated as the Insurance Company of Decatur for a year or so. Then Anthem Casualty Insurance Company was created to replace Kemper Casualty, with

Insurance Company of Decatur disappearing, and Shelby, Insura, and the other one operating as sister companies to Anthem Casualty under Anthem P & C and ultimately Anthem, Inc. Then Anthem P & C sold all of its business (Anthem Casualty, Shelby, Insura, etc.) to Vesta Insurance Company. Vesta then began marketing exclusively under the name of Shelby Insurance. Anthem Casualty, Insura, and the one I can't remember became nonexistent. But there are insurance policies out there in the hands of policyholders written by Kemper, Insurance Company of Decatur, Shelby, Anthem Casualty, and Insura. If one of these policyholders has a dispute, who do you sue? Most of the policy-issuing companies are nonexistent, but how is one supposed to figure all this out? The burden has to be on the insurance people, not only to tell you if you got the wrong one (at least as they see it), but also to specifically identify the right one.

> \*　　\*　　\*

> The insurance industry creates these structural quagmires to suit its marketing and tax interests, and it has the obligation to clarify the things (as they exist at any given moment) for the rest of us. Complaints should never be dismissed because of a bunch of insurance guys playing hide-the-peanut.

Barry Hill, "Don't Let Insurance Companies Set Your Court's Agenda," 2–3 (August 1998) (presented to the circuit court judicial clerks in Charleston, West Virginia; available online at http://www.juryverdict.com/43agenda.pdf).

tiff's lawyer should have appealed the judge's order, or immediately filed a motion under Rule 59 of the *West Virginia Rules of Civil Procedure.*

And in the end, an injured person is failed by the justice system.

McGRAW, Justice, dissenting.
(Filed Jan. 16, 2001)

As stated by Justice Starcher, the plaintiff in this case went to a particular building in South Charleston known as "Thomas Memorial Hospital," where she allegedly suffered an injury. She may not have known the "official name" of the entity that operated the building; she just knew she went to the location referred to by everybody in town as "Thomas Memorial Hospital."

There is no confusion about which hospital she visited, only confusion over the precise name of the operating entity. She filed, in good faith, a lawsuit against what she thought to be "the hospital." In my view, she should have her day in court. Thus I respectfully dissent to the majority opinion.